## SUPREME COURT.

THE PEOPLE *ex rel.* THE TOWN OF KNOX agt. THE BOARD
OF SUPERVISORS OF ALBANY COUNTY AND THE TOWN OF
BERNE.

*Supervisors — Their powers and duties as to disputed boundary lines between
towns — Notice of intention to apply to board to fix line when defective —
Board acts judicially — When prohibition lies to restrain proceedings of the
board of supervisors.*

A notice of intention to apply to a board of supervisors to fix, establish,
locate and define a disputed boundary line between two towns, which
omits to describe particularly the line in dispute, is defective although
the line proposed to be acted upon is fully stated, and such a notice con-
fers no jurisdiction on the board.

Said board acts judicially in such a case.

Prohibition lies to restrain proceedings of the board of supervisors, judi-
cial in their nature, under a notice which confers no jurisdiction.

*Special Term, Kingston, June,* 1882.

BERNE was one of the original towns of Albany county.
By chapter 48 of the Laws of 1822, Berne was divided and
Knox created therefrom, the dividing line being specifically
described. About a year ago a dispute arose between said
towns with reference to their division or boundary line. A
notice was served and published of which the following is a
copy: "Notice is hereby given that an application will be
made to the board of supervisors of the county of Albany, at
a session of said board appointed to be held at their rooms in
the city of Albany on the 17th day of March, 1882, to fix,
establish, locate and define the disputed boundary line between
the towns of Knox and Berne, in said county, and the pro-
posed boundary line is particularly described as follows, to
wit: Beginning at a stake at the fence in the western
boundary line of the county of Albany, standing three (3)
chains twenty (20) links southerly from the center of the
public highway (as now used and occupied) leading from

the village of West Berne to Schoharie Court House. The above distance from said road to be measured on the Albany and Schoharie county line, and runs from said stake, according to the magnetic meridian of June, 1881, north eighty-eight (88) degrees and fifteen (15) minutes, east six hundred and ninety-seven (697) chains thirty-seven (37) links to a stone monument standing in the western boundary line of the town of New Scotland, in said county of Albany, which said stone is eighteen (18) chains forty (40) links distant southerly from the center of the road known as the Indian Ladder road, which said distance from said road is to be measured on the New Scotland boundary line. NOTE. —The above described line, at about eighty-four (84) chains forty (40) links, strikes the cupola of a barn said to belong to Dewitt Schoonmaker, and at about six hundred and sixty-three (663) chains strikes a barn said to belong to John Hungerford, and being the same line as run by William H. Slingerland & Son.

"Dated *February* 14, 1882.

"FREDERICK W. CONGER,
         "*Supervisor of Town of Berne.*
"MADISON BALL,
         "*Town Clerk of Town of Berne.*
"FRANK STREVELL,
         "*Justice of the Peace of Town of Berne.*
"ELIAS YOUNG,
         "*Justice of the Peace of Town of Berne.*"

At the time specified in said notice the board of supervisors met and the town of Knox appeared by counsel and objected to the form of the notice. A resolution fixing the boundary line as proposed in said notice was offered, and on objection made by the supervisor of Knox went over to the next day under a rule of the board. An adjournment was taken to the next day, when a further adjournment was had until the succeeding Thursday. It was the intention of said board to act

upon said notice and pass said resolution. In the meantime, and on the 21st day of March, 1882, an alternative writ of prohibition was granted and duly issued returnable at the then ensuing regular Albany April special term. The writ was served. The case came on to be heard, the relator asking for a peremptory writ.

*Edward J. Meegan,* for relator.

I. The power to determine as to town boundaries is given to the board of supervisors and is two-fold in its character. 1. It has authority at its annual meeting, without notice, and by a two-third vote, to alter town boundaries (1 *Laws of* 1871, *p.* 23, *chap.* 18). The only restriction being that assembly districts cannot be altered. To do so would violate section 5 of article 3 of the Constitution (*Kinnie agt. Syracuse,* 3 *Keyes,* 110). 2. The second jurisdiction is conferred by chapter 361 of the Laws of 1870 (*Sess. Laws,* 832; 1 *R. S.* [*6th ed.*], 865, *sub.* 15). This act confers power " to fix, establish, locate and define disputed boundary lines between the several towns, * * * by a resolution to be duly passed by a majority of all the members elected to such board. A notice of intention to apply to such board to fix, establish, locate and define such disputed boundary line, particularly describing the same, and the line as proposed to be acted upon by such board, signed by the supervisor," etc., and published in three papers and personally served upon the supervisor and town clerk of the other town to be affected.

II. To confer jurisdiction upon the board of supervisors, the statute must be complied with and the notice given should conform to the statute, and it is submitted that the said notice did not comply with the requirements thereof. 1. Where a court exercises a special jurisdiction under a statute the mode of proceeding must be strictly pursued (*Sedg. Stat. and Const. Law* [*Pomeroy's ed.*], 301). Any departure vitiates the whole proceeding (*Sedg., supra,* 302; *People* agt. *Kniskern,* 54 *N. Y.,* 58). 2. When a statute prescribes the mode of acquiring juris-

diction, the mode pointed out must be complied with or the proceedings will be a nullity (*The People* agt. *Board of Police*, 6 *Abb.*, 164; *Wells on Juris. of Courts*, secs. 70, 72, 82). 3. " The notice must conform to the statute" (*Pierce on Railroads*, 183). 4. The maxim is familiar " that notice is of the essence of things required to be done," and it applies to all judicial or *quasi* judicial proceedings (*Black. on Tax Titles*, 237), and when the statute prescribes the form of a notice or advertisement it must be strictly complied with (*Black.*, *supra*, 247). A notice to interested parties is jurisdictional, and the notice is strictly construed (*Wells on Juris. of Courts*, *p.* 411, *sec.* 418). 5. The rule is stated in *Cissell* agt. *Pulaski Co.* (10 *Federal Rep.*, 893), thus: " It is a rule without qualification or exception, that when it is sought to conclude a party by constructive notice by publication, a strict compliance with the requirements of the statute is required. Nothing can be taken by intendment, and every fact necessary to the exercise of jurisdiction, based on this mode of service, must affirmatively appear in the mode prescribed by the statute." And parol evidence cannot be received to supply the omission (*Noyes* agt. *Butler*, 6 *Barb.*, 617; *Lanny* agt. *Cady*, 4 *Vt.*, 506). 6. The notice to be served and published in the case at bar was required to contain: 1st. A notice of intention to apply to the board. 2d. A description of the disputed line. 3d. The line as proposed to be acted upon. The notice in question did not contain a description of the disputed line, and the failure to designate this line omitted an essential prerequisite to jurisdiction. It was evidently designed by the statute that the notice should specify the gist of the controversy, setting forth the line about which the quarrel existed as well the claimed line. The conjunction " and" in the sentence, and occurring after the comma, emphasizes and makes plain the intent of the legislature to be that the line in dispute, as well the proposed line, should be particularized; the old line representing the town of Knox and the proposed line the town of Berne. As no

subsequent pleading or statement was required by the statute from either town, to make the supervisors cognizant of the nature of the trouble, the first notice of necessity should give a plain and concise summary of the facts required to be stated by the statute, to the end that an intelligent line of action might be adopted by the board. For all that may appear, if the disputed line was inserted, the town of Knox might not deem it necessary to put in an appearance, as the difference could then be seen and understood. 7. Judge HEBARD, in *Briggs* agt. *Georgia* (15 *Vt.*, 72), voices the settled doctrine: "I am not very well satisfied with the summary mode of getting rid of a statutory provision by calling it directory. If one positive requirement and provision of a statute may be avoided in that way, we see no reason why another may not."

III. The town of Knox had the capacity to institute these proceedings in order to protect itself, the subject-matter being a controversy between towns (1 *R. S.* [*7th ed.*], 840, *title* 5).

IV. The writ of prohibition was the proper remedy in the premises. In no other way could relief be obtained. 1. The board of supervisors were invested by the statute with judicial powers. This is apparent from the consideration of the two statutes relating to town lines. At the annual meeting, by a two-third vote, the board may establish and alter town lines without let, hindrance or notice to anybody; but where this is not done, the only power exists under the statute that requires a notice and prescribes its form and how it shall be served. It would be idle to require service of a notice, unless that meant something. Why be present if you could not be heard; and how heard? If you could give no testimony, the alleged hearing would be a farce; unless, therefore, the board was obliged to weigh and consider such evidence, why receive it; and if they are to weigh and consider such evidence, is not this the exercise of judicial power. 2. The board of supervisors exercising, as it does in this regard judicial powers, the functions of a court, and by virtue

thereof proceeding to inflict what was and is claimed to be a great wrong upon an important division of the county, it is eminently appropriate that the functions of the supreme court should be invoked to prevent an act of oppression by this tribunal which assumes and usurps a jurisdiction it failed to acquire.   3. The writ of prohibition, and the practice in relation to it, is provided for by the Code of Civil Procedure, article 5, section 2091, etc.   4. Prohibition lies to restrain a mayor from removing a police commissioner when he has no power to do so (*The People ex rel. Wheeler* agt. *Cooper*, 57 *How. Pr.*, 426).   It lies against excise commissioners (*The People* agt. *Com. of Excise*, 61 *How. Pr.*, 514).   5. In 25 *Albany Law Journal*, 290, an opinion of judge ARNOUX (of the New York 'superior court, handed down March 14, 1882), is published, from which the following excerpts are taken: "Although the writ of prohibition is comparatively infrequent, nevertheless it is deemed to be a beneficial writ, and one that should issue where a subordinate court or inferior tribunal attempts to act without jurisdiction or beyond its jurisdiction (*Ex parte Braudlacht*, 2 *Hill*, 367; *People* agt. *Supervisors of Queens*, 1 *id.*, 201; *People* agt. *Seward*, 7 *Wend.*, 518; *People* agt. *Marine Court*, 36 *Barb.*, 341; *People* agt. *N. Y. Common Pleas*, 18 *Abb.*, 438; *People* agt. *Oyer and Terminer*, 27 *How. Pr.*, 19; *People* agt. *McAdam*, 58 *id.*, 442; *People* agt. *Cooper*, 57 *id.*, 426; *People* agt. *Special Term*, 57 *id.*, 467).   As the court of appeals say in *Appo* agt. *People* (20 *N. Y.*, 531, 540): 'It is a proper remedy when the inferior tribunal either entertains a proceeding in which it has no jurisdiction, or when having jurisdiction it assumes to exercise an unauthorized power.'   With this the old English authorities agree, for Jacob quaintly says it issues against inferior courts acting without jurisdiction, or 'if in handling of matters clearly within their cognizance, they transgress the bounds prescribed to them by the laws of England' (*Law Dict.*, tit. "*Prohibition*"). The reason why this writ is esteemed as beneficial is well

NEW YORK PRACTICE REPORTS. 417

The People *ex rel.* Town of Knox agt. Supervisors of Albany Co.

expressed by SELDEN, J., in *Appo* agt. *The People* (*supra*). 'It is far better to prevent the exercise of an unauthorized power,' he says, 'than to be driven to the necessity of correcting the error after it has been committed.' No question but jurisdiction can be tried in a proceeding inaugurated by prohibition. In such cases the inquiry relates to jurisdiction simply (*People* agt. *Nichols*, 79 *N. Y.*, 582, 591). * * * The first inquiry then under the foregoing authorities, is this : Is the board of excise acting without jurisdiction ? Jurisdiction has been defined to be the right to pronounce judgment acquired through due process of law (1 *Hurd on Freedom and Bondage*, 22 ; *Sprague's New Science of Law*, 4; *Du Ponceau on Jurisdiction*, 21 ; *Austin on Jurisprudence*, 793)."

*Oliver M. Hungerford*, for town of Berne.

WESTBROOK, J. — The Revised Statutes (1 *R. S.* [*6th ed.*], 865, *sub.* 15, *sec.* 14), which give to boards of supervisors power "to fix, establish, locate and define disputed boundary lines between the several towns in their respective counties," require, as preliminary to their action, the publication and service of such a notice as is therein provided. The notice must specify the line to be fixed, concerning which the dispute exists, "particularly describing the same," and it must also describe "the line as proposed to be acted upon by such board." Until such a notice is given the board has no authority to act. The notice given in this case is defective, for while it particularly describes the proposed line, it fails to describe with particularity the line concerning which the dispute exists. As to this fact there is no denial, and the omission is fatal to the whole proceeding. The statute is plain, and cannot be disregarded. The fixing and settlement of this boundary line by the board is judicial action, and if attempted without having obtained jurisdiction, as required by law, may be restrained. The peremptory writ must issue.